UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL RIGHTS ADVOCATES, INC., <br><br> Plaintiff, <br><br> v. <br><br> NESTLE USA, INC., <br><br> Defendant. | Civil Action No. 25-cv-2603 (BAH) <br><br> Judge Beryl A. Howell |

### MEMORANDUM OPINION

Plaintiff International Rights Advocates, Inc. brought this lawsuit in the D.C. Superior Court, under the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq.*, alleging that defendant Nestlé USA, Inc.'s advertisements misled the public by claiming that neither child nor forced labor is used to produce defendant's cocoa products. Defendant removed this case to federal court based on a calculation of the jurisdictional monetary amount that deviates from the usual practice on this Court of applying a non-aggregation principle requiring "the projected amount in controversy [to] be divided among the beneficiaries of cases that are brought in the public interest." *Inst. for Truth in Mktg. v. Total Health Network Corp.*, 321 F. Supp. 3d 76, 89 (D.D.C. 2018) (KBJ).

This same stratagem to satisfy the jurisdictional requirement for removal of a case to this Court has been employed, and rejected, in other cases. Recently, for example, in *International Rights Advocates, Inc. v. Mars, Inc.*, 24-cv-894 (RCL), 2025 WL 819580 (D.D.C. Mar. 13, 2025), a removed case involving similar allegations of misleading advertisements regarding cocoa products as not produced by child labor, the presiding Judge concluded that "the defendants have not convinced the Court to depart from this District's conventional wisdom

1

regarding the calculation of the amount in controversy in representative DCCPPA actions: the cost of complying with a hypothetical injunction must be divided among the beneficiary population, which in this case is the population of D.C." *Id.* at *10. Here, too, defendant fails to persuade that a departure from longstanding adherence to the non-aggregation principle is warranted, and therefore, as explained in more detail below, the motion to remand is granted.

## I. BACKGROUND

Plaintiff filed the instant case under the CPPA in the Superior Court for the District of Columbia on May 30, 2025. Notice of Removal, Ex. 1, Super. Ct. Compl. ("Compl."), ECF No. 1-1. The complaint alleges that "Nestlé makes false and deceptive marketing representations to D.C. consumers, including that Nestlé has 'zero tolerance to child labor, forced labor and modem slavery' and is 'firmly opposed to all forms of child exploitation and [] committed to preventing and eliminating child labour wherever it occurs in [its] supply chain.'" *Id.* at 1 (alterations in original) (footnotes omitted). The complaint further alleges that "Nestlé makes statements like these despite having been aware for more than two decades that its cocoa is produced with child labor and human trafficking." *Id.* As a consequence, "Nestlé's representations deceive consumers into believing that Nestlé is taking meaningful action to address and prevent child labor in its supply chain, while no such thing is occurring," *id.* ¶ 10, and this advertising "is false and misleading to District consumers," *id.* ¶ 15.

The CPPA prohibits "any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby, including to:" "represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;" to "represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of

another;" and to "misrepresent as to a material fact which has a tendency to mislead." D.C. Code § 28–3904(a), (d), (e). CPPA contains a private attorney general provision authorizing "a public interest organization [], on behalf of the interests of a consumer or a class of consumers, [to] bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer or class of consumer could bring an action under subparagraph (A) of this paragraph for relief from such use by such person of such trade practice." *Id.* § 28–3905(k)(1)(D)(i).[1] As relief, this lawsuit neither seeks class certification nor damages but rather "injunctive relief enjoining Defendant from continuing to engage in the unlawful trade practices" as well as "declaratory relief in the form of an order holding Nestlé's conduct to be unlawful in violation of the CPPA and requests its attorneys' fees and costs incurred in bringing this action." Compl. ¶ 31.

After being served, on July 22, 2025, *see* Notice of Removal, Ex. 4, Proof of Service, ECF No. 1-4, defendant filed a notice of removal with this Court, on August 8, 2025, *see* Notice of Removal, within the thirty-day time limit prescribed by 28 U.S.C. § 1446(b)(1). The notice of removal asserts diversity subject-matter jurisdiction over this action because plaintiff "is a nonprofit organized under the laws of the District of Columbia and with its principal place of business in the District of Columbia," defendant "is incorporated in Delaware and has its principal place of business in Virginia," so "there is complete diversity of citizenship," and "the costs of complying with the injunctive relief that [plaintiff] seeks and the attorneys' fees that [plaintiff] has requested are reasonably anticipated to exceed $75,000." Notice of Removal ¶¶ 9-13.

---

[1] Subparagraph A states: "A consumer may bring an action seeking relief from the use of a trade practice in violation of a law of the District." D.C. Code § 28–3905(k)(1)(A).

After adoption of the parties' proposed schedule for briefing on the motion to remand, Minute Order (Aug. 29, 2025), this motion became ripe for resolution on December 8, 2025, *see* Pl.'s Reply Mem. in Supp. Pl.'s Mot. to Remand ("Pl.'s Reply"), ECF No. 14.

## II.   LEGAL STANDARD

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Removal is thus appropriate where the case raises questions "under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, or "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States," 28 U.S.C. § 1332(a)(1). An "essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so." *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662 (2019) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)).

A plaintiff may seek remand of the case back to State court for defects including a "lack of subject matter jurisdiction." 28 U.S.C. § 1447(c). "When it appears that a district court lacks subject matter jurisdiction over a case that has been removed from a state court, the district court must remand the case, and the court's order remanding the case to the state court whence it came 'is not reviewable on appeal or otherwise.'" *Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002) (citing 28 U.S.C. § 1447(c) and quoting *id.* § 1447(d)). The Supreme Court has repeatedly reminded that "[f]ederal courts are courts of limited jurisdiction," so "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11

4

(1799), and *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 578 U.S. 374, 389-90 (2016) (noting that the "'deeply felt and traditional reluctance . . . to expand the jurisdiction of the federal courts through a broad reading of jurisdictional statutes'. . . . [serves] to help maintain the constitutional balance between state and federal judiciaries" (first alteration in original) (quoting *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 379 (1959))).. In other words, when removal is challenged, defendants "must take and carry the burden of proof." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *see also Bronner ex rel. Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 610 (D.C. Cir. 2020) ("[W]e have emphasized that . . . the party asserting jurisdiction always bears the burden of establishing the amount in controversy once it has been put in question." (ellipses in original) (quoting *Rosenboro v. Kim*, 994 F.2d 13, 17 (D.C. Cir. 1993))).

## III.   DISCUSSION

The only basis for federal jurisdiction asserted in defendant's notice of removal is diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a).  *See* Notice of Removal ¶ 7.  Diversity jurisdiction requires both "complete diversity between all plaintiffs and all defendants" and an "amount in controversy [that] exceeds $75,000."  *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005).  The parties agree that the former requirement is satisfied because plaintiff "is a citizen of the District of Columbia, but [defendant] is not."  Notice of Removal ¶ 6.  Defendant cannot satisfy the second requirement because application of the non-aggregation principle precludes the damages sought in the complaint from meeting the amount-in-controversy requirement. Analysis proceeds in two parts, first explicating the non-aggregation principle and then applying that principle to the instant matter.

### A.    The Non-Aggregation Principle Applies to CPPA Actions Seeking Injunctions on Behalf of the General Public

A prerequisite for diversity jurisdiction is an amount in controversy in excess of $75,000. 28 U.S.C. § 1332(a)(1). "In actions seeking declaratory or injunctive relief," as here, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977). The D.C. Circuit has elaborated that, "[i]n assessing whether a complaint satisfies that standard, a court may look either to 'the value of the right that plaintiff seeks to enforce or to protect' or to the cost to the defendants to remedy the alleged denial." *Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978) (footnotes omitted).

The non-aggregation principle follows "[t]he traditional judicial interpretation . . . that the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." *Snyder v. Harris*, 394 U.S. 332, 335 (1969). The "doctrine is based rather upon [the Supreme] Court's interpretation of the statutory phrase 'matter in controversy.'" *Id.* at 336. Such interpretation has been so longstanding that by 1916, the Supreme Court had determined "that it was 'settled doctrine' that separate and distinct claims could not be aggregated to meet the required jurisdictional amount." *Id.* (citing *Pinel v. Pinel*, 240 U.S. 594, 596 (1916)). The Supreme Court reasoned that "[t]o overrule the aggregation doctrine at this late date would run counter to the congressional purpose in steadily increasing through the years the jurisdictional amount requirement." *Id.* at 339.

As then-District Court Judge Ketanji B. Jackson observed, "[a]lthough the D.C. Circuit has not spoken to the application of the non-aggregation principle to representative suits such as this one, courts in this district routinely apply this rule when considering the amount in controversy in cases that seek injunctive relief and, like this one, are brought 'on behalf of . . .

6

the general public[.]" *Inst. for Truth in Mktg.*, 321 F. Supp. 3d at 91 (alterations in original) (citation omitted). Thus, in that case, "[c]onsistent with persuasive precedents in this district," Judge Jackson "conclude[d] that the appropriate measure of the requested injunctive relief is not the amount that [defendant] must spend to comply with the injunction, but that amount *divided by* the number of members of the public on whose behalf Plaintiff brings the action." *Id.* (emphasis in original).

This Court has applied the non-aggregation principle to CPPA claims and found that "when a plaintiff brings a CPPA claim on behalf of the general public, the attorney's fees must be apportioned such that only the fees properly attributable to the plaintiff herself are considered as part of the amount in controversy" and, likewise, "the cost of complying with an injunction is appropriately included in the amount in controversy for purposes of 28 U.S.C. § 1332(a) but may not be aggregated across multiple plaintiffs and must instead by allocated to each plaintiff on a *pro rata* basis." *Rasay v. Pepperidge Farm, Inc.*, No. 22-cv-449 (BAH), 2022 WL 4300061, at *6-7 (D.D.C. Sept. 19, 2022) (citations omitted). Other Judges on this Court have done the same.

Defendant promotes language from two D.C. Circuit opinions from the 1970s as compelling a different result and, by implication, showing consistent error in decisions by this Court when ruling on these motions for remand. *See* Notice of Removal ¶ 19. In *Committee for GI Rights v. Callaway*, 518 F.2d 466 (D.C. Cir. 1975), the D.C. Circuit stated that "the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce." *Id.* at 472 (quoting *Tatum v. Laird*, 444 F.2d 947, 951 n.6 (D.C. Cir. 1971)). In addition, in *Smith v. Washington*, 593 F.2d 1097 (D.C. Cir. 1978), the D.C. Circuit stated that, when determining whether a complaint satisfies the jurisdictional requirement, "a

7

court may look either to 'the value of the right that plaintiff seeks to enforce or to protect' or to the cost to the defendants to remedy the alleged denial." *Id.* at 1099 (quoting 14 Wright & Miller's FEDERAL PRACTICE & PROCEDURE: JURISDICTION § 3702 (1976)).  This identical argument has been considered and rejected, for sound reasons.  "[A]s other courts in this district have recognized in the context of similar CPPA actions, those earlier decisions stand for the unremarkable proposition that 'the D.C. Circuit has adopted the "either-viewpoint" approach to calculating amounts in controversy—which allows for consideration of either the value of the plaintiff's requested relief or the defendant's potential costs—in cases where only equitable relief is sought.'" *Earth Island Inst. v. BlueTriton Brands*, 583 F. Supp. 3d 105, 110-11 (D.D.C. 2022) (JEB) (quoting *Organic Consumers Ass'n v. Handsome Brook Farm Grp. 2, LLC*, 222 F. Supp. 3d 74, 77 (D.D.C. 2016) (CRC)).  These two older D.C. Circuit cases do not address how the value of either the requested relief or potential costs are to be computed, on an aggregate or nonaggregate basis, and thus "are tangential to the issue presented and shed far less light on the appropriate resolution than do the numerous decisions of courts in this district, which squarely and thoroughly addressed the matter." *Id.* at 110 (addressing D.C. Circuit cases including *Smith v. Washington* and *Committee for GI Rights v. Callaway*); *see also Food & Water Watch, Inc. v. Tyson Foods, Inc.*, 19-cv-2811 (APM), 2020 WL 1065553, at *3 (D.D.C. Mar. 5, 2020) ("That the either-viewpoint approach governs does not, however, resolve the ultimate issue of how to value the amount in controversy in this case.  The question remains whether the court should rely on Defendant's estimated full cost of compliance, or some lesser amount, as Plaintiffs urge, based on the non-aggregation principle.").

> **B.      Neither Defendant's Compliance Costs Nor Plaintiff's Attorneys Fees Individually or Combined Satisfy the Amount in Controversy Requirement**

Having determined that the non-aggregation principle applies, analysis turns to whether the anticipated costs that defendant can plausibly show satisfies the amount in controversy requirement.  Defendant claims that its cost of compliance would satisfy this standard because plaintiff's challenge applies to "statements made on the Nestlé USA's product labels, websites, corporate policies, and/or other materials alleged to be accessible to consumers" would require defendant "to formulate new material to replace the challenged statements, identify each place that the challenged statements appear, adapt the new material to replace the challenged statements, and manufacture new labels for untold numbers of products" necessitating the "involvement of policy personnel, lawyers, communications and graphics vendors and specialists to create the new material, and information technology personnel and lawyers to identify the material covered by the litigation."  Notice of Removal ¶ 15.[2]  These costs of compliance "would exceed $75,000."  *Id.*

Defendant seems to express some incredulity that application of the non-aggregation principle places "the real amount-in-controversy requirement for this case [at] somewhere around *$52 billion*—that is, the ordinary $75,000 requirement multiplied by the total population of the District."  Nestlé USA, Inc.'s Opp'n to Pl.'s Mot. to Remand ("Def.'s Opp'n") at 7, ECF No. 13 (emphasis in original).  Such reaction is misplaced.  After all, if there were not complete diversity in this suit, the matter would be heard by the D.C. Superior Court, even if the amount in controversy were $52 billion.  Large matters may be tried outside of federal courts.  Indeed, Congress has even expressed an interest in doing so where certain controversies are local in

---

[2]      Notably, defendant never contemplates the costs associated with ensuring that child labor is removed from its supply chain for cocoa, the other avenue by which the company may correct alleged inconsistencies between its advertisements and its practices.

nature. *See* 28 U.S.C. § 1332(d)(3) (permitting federal district courts "in the interests of justice and looking at the totality of the circumstances" to decline to exercise jurisdiction under the Class Action Fairness Act when certain criteria are satisfied including "whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State" but not considering the amount in controversy).

Next, defendant offers attorneys' fees as an additional basis for meeting the amount-in-controversy requirement. Defendant is correct that "[a]ttorneys' fees 'are part of the amount in controversy if they are provided for by statute.'" Def.'s Opp'n at 8 (quoting *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 301 (D.D.C. 2013) (JDB)). After all, the Supreme Court has long held that attorneys' fees permitted by a statute "became part of the matter in controversy by the complaint, and not mere 'costs' excluded from the reckoning by the jurisdictional and removal statutes," *Mo. State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933), and CPPA permits recovery of "[r]easonable attorney's fees," D.C. Code § 28-3905(k)(2)(B). *See Rasay*, 2022 WL 4300061, at *6 ("When a contract or statute provides that attorney's fees may be included in a judgment against a defendant, the estimated value of these fees may be considered in determining the amount in controversy."). Defendant goes further, noting that plaintiff "withdrew its lead counsel—the only lawyer who signed the complaint—to try to avoid the indisputable conclusion that IRA is seeking attorneys' fees that exceed $75,000 for itself, rather than the public," Def.'s Opp'n at 1, and arguing that "where the plaintiff is also former lead counsel, however, attorneys' fees are not subject to the non-aggregation principle because [plaintiff] will obtain relief that is not common to the public," *id.* at 10.

This same argument was rejected in *Food & Water Watch v. Smithfield Foods, Inc.*, No. 21-cv-2065 (CRC), 2021 WL 8821537 (D.D.C. Dec. 6, 2021). There, an organizational plaintiff sought statutory damages and injunctive relief under § 28–3905(k)(1)(C) and (k)(1)(D) of the CPPA based on purported misrepresentations made by a Virginia-based food company. *Id.* at *1. That case also involved a unity in identity between the plaintiff and plaintiff's counsel, prompting the defendant to argue that the portion of the attorneys' fees that would be directed to plaintiff were "on behalf of just [plaintiff] itself and not the general public," so "non-aggregation should not apply to fees incurred litigating [plaintiff]'s organizational standing." *Id.* at *3. Focusing analysis on the CPPA text supporting the claim, the Court noted that "[s]ubsection (k)(1)(C) permits an organization to seek relief 'on behalf of itself or any of its members, or on any such behalf *and on behalf of the general public*." *Id.* (emphasis in original). The Court concluded that "[l]itigating organizational standing under subsection (k)(1)(C) is a prerequisite to [plaintiff]'s obtaining injunctive relief on behalf of the public, so non-aggregation would logically apply to any fees spent litigating that issue just as the principle would apply under (k)(1)(D)." *Id.* Furthermore, the Court observed, "no matter what, as mentioned, [defendant] would need to lean on attorneys' fees to push the amount in controversy over the $75,000 threshold," and "[a] long line of cases forecloses that tactic." *Id.* (collecting cases).

The instant matter is more straightforward. D.C. Code § 28–3905(k)(1)(C) permits a "nonprofit organization" to "bring an action" on "behalf of itself or any of its members, or on any such behalf and on behalf of the general public." The reasoning in *Smithfield Foods* shows why, when an organization is acting on behalf of the general public under (k)(1)(C), the non-aggregation principle applies to attorneys' fees even when there is a unity of identity between the plaintiff and plaintiff's counsel and regardless of the fact that (k)(1)(C) permits an organization

11

to recover on its own behalf. Here, plaintiff brings this case on behalf of "the interests of District of Columbia consumers" under D.C. Code § 28–3905(k)(1)(D). Compl. ¶ 23. Subsection (k)(1)(D) only allows "a public interest organization " to "bring an action" on "behalf of the interests of a consumer or a class of consumers." This subsection, unlike (k)(1)(C), does not allow the organization to recover for its own injuries. The fees generated to bring this claim are necessary to provide relief for the District of Columbia consumers, so the non-aggregation principle applies to plaintiff's attorneys' fees.

The language that defendant cites in *Mars* is not to the contrary. Def.'s Opp'n at 13-14. To be sure, defendant is correct that in *Mars*, the Court noted that "IRAdvocates' unusual posture of self-representation strikes the Court as potentially salient to the jurisdictional amount calculation" and that "because an IRAdvocate attorney is working on the case, the organization stands to gain a differentiated monetary benefit that is not shared with the general public it purports to represent." 2025 WL 819580, at *8. Importantly, however, the *Mars* Court declined to decide the issue and went on to find that the evidence as to the amount of attorneys' fees was based on speculation and conclusory statements, 2025 WL 819580, at *8, an evidentiary gap defendant here attempts to ameliorate by submitting an expert declaration estimating plaintiff's attorneys' fees to date, *see* Def.'s Opp'n, Decl. of Principal & Founder of Litig. Ltd., Grant Stiefel, ECF No. 13-2. This proffered expert declaration is unavailing since, unlike the *Mars* Court, this Court has resolved the issue to hold that the non-aggregation principle applies to these attorneys' fees. While the unity of identity between plaintiff and plaintiff's counsel may be "unusual," permitting use of the non-aggregation principle is consistent with the views of many judges on this Court who have expressed that they are "not entirely comfortable with the premise that an action should be retained in federal court where satisfaction of the amount in controversy

requirement depends upon a lump sum award of attorneys' fees." *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 107 (D.D.C. 2008) (JDB); *see, e.g.*, *Organic Consumers Ass'n v. R.C. Bigelow, Inc.*, 314 F. Supp. 3d 344, 354 (D.D.C. 2018) (RBW) (quoting this proposition from *Breakman*); *Sloan v. Soul Circus, Inc.*, No. 15-cv-1389 (RC), 2015 WL 9272838, at *9 (D.D.C. Dec. 18, 2015) (same); *Nat'l Consumers League v. Gen. Mills, Inc.*, 680 F. Supp. 2d 132, 141 (D.D.C. 2010) (HHK) (same). Any lingering doubt is obviated by the observation of the Supreme Court that its decisions "reflect a 'deeply felt and traditional reluctance . . . to expand the jurisdiction of the federal courts through a broad reading of jurisdictional statutes.'" *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 578 U.S. at 389-90 (alteration in original) (quoting *Romero*, 358 U.S. at 379).[3] The Supreme Court counsels that this "interpretive stance serves, among other things, to keep state-law actions like [respondent]'s in state court, and thus to help maintain the constitutional balance between state and federal judiciaries." *Id.* at 390. This suit brought under the D.C. Code will thus be heard in D.C. Superior Court.

### C. Fees and Expenses Will Not Be Imposed

Plaintiff "requests to recoup its just costs and actual expenses, including attorneys' fees, associated with returning this case to the District of Columbia Superior Court, on the basis that Nestlé lacked an objectively reasonable basis for removal." Pl.'s Mem. at 19. The Supreme Court has held that "the standard for awarding fees should turn on the reasonableness of removal" and "that, absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136, 141 (2005). Here, while the decisions of the district court

---

[3] Having determined that this Court lacks subject-matter jurisdiction because the threshold monetary requirement for diversity jurisdiction has not been satisfied, the question of whether plaintiff has Article III standing under the CPPA need not be reached. *See* Pl.'s Mem. in Supp. of Mot. to Remand ("Pl.'s Mem.") at 17-19, ECF No. 11-1; Def.'s Opp'n at 21-24; Pl.'s Reply at 10-14.

13

"overwhelmingly favored Plaintiffs' position, there is no recent, controlling authority from the D.C. Circuit as to the interplay between the 'non-aggregation' and 'either-viewpoint' doctrines," *Tyson Foods, Inc.*, 2020 WL 1065553, at *5, leaving the basis for removal asserted as a potential option.

Plaintiff, however, contends that removing this matter was "objectively unreasonable" because the removal "forced expense upon IRAdvocates," "intentionally delayed an action that seeks injunctive relief against ongoing conduct," and was rendered unusual because the "same counsel for both Parties was involved with the *Mars* matter, which . . . saw this Court grant remand after considering the same arguments Nestlé puts forth here." Pl.'s Mem. at 19-20. As to the first two justifications, expense and delay is inherent in every improper removal because, as the Supreme Court observed, "[t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources." *Martin*, 546 U.S. at 140. Plaintiff's third proffered argument comes closer to presenting an "unusual circumstance" because, as recently as March 2025, counsel for both parties were engaged in litigating a substantially similar remand motion in this Court considering application of the non-aggregation principle to the CPPA. Nothing in the record clearly establishes that removal was sought as a means to protract litigation, and defendant is correct that the *Mars* court left unresolved "the jurisdictional implications of the plaintiff serving as its own counsel in a DCCPPA representative action," so the instant matter is "unique as to the jurisdictional inquiry." Def.'s Opp'n at 26-27 (quoting *Mars*, 2025 WL 819580, at *10). Removal was thus not objectively unreasonable, and there are no unusual circumstances present, so plaintiff is not entitled to attorneys' fees and costs connected with litigating the instant remand motion.

IV.     CONCLUSION

For the foregoing reasons, the non-aggregation principle applies to this CPPA claim, plaintiff's motion to remand is granted, and interim fees and costs are denied. An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  February 5, 2026

_____
**BERYL A. HOWELL**
United States District Judge